Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
TELEPHONE 602.229.5200

Isaac M. Gabriel, Esq. (#021780)
isaac.gabriel@quarles.com
Hannah R. Torres, Esq. (#033137)
hannah.torres@quarles.com

Proposed Attorneys for Kinser Group LLC

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

In re:

KINSER GROUP LLC,

Debtor.

In Proceedings Under Chapter 11

Case No.  2:20-bk-09355_____

**DECLARATION OF KEN EDWARDS IN SUPPORT OF FIRST DAY MOTIONS**

1.      I am over the age of 21 years old and have personal knowledge of the matters stated herein.

2.      I am preparing this Declaration in connection with the Chapter 11 bankruptcy case filed by KINSER GROUP LLC, an Arizona limited liability company (the "Debtor").

3.      The Debtor owns and operates two hotels located in Bloomington, Indiana – a 118-room Holiday Inn located at 1710 Kinser Pike (the "Holiday Inn"), and a 66-room Comfort Inn located at 1700 Kinser Pike (the "Comfort Inn" and, together with the Holiday Inn, the "Hotels").

4.      The members of the Debtor are Mark Houser, Century Hospitality, LLC, and Grace Hotels, LLC ("Grace").  I, along with Grace, act as the managers of the Debtor

1    under its operating agreement.

2          5.      The day-to-day operations of the Hotels are managed by Tristar Investment

3    Company, L.L.C. I ("Tristar") pursuant to a management agreement agreed upon by the

4    Debtor's members.  I, through my entity Century Hospitality, LLC, own and manage

5    Tristar.

6          6.      Tristar is also the management company for all of the hotels I am affiliated

7    with and/or own, and manages hotels that are owned by third-parties unaffiliated with me

8    or the Debtor.  Tristar operates using a consolidated management structure, so that each

9    individual hotel does not need its own separate management team.

10         7.      Pursuant to the written management agreement (contained within the

11   Debtor's Operating Agreement), Tristar receives a management fee of four percent (4%)

12   of the Hotels' gross revenues.  The management fee is paid by the Debtor to Tristar on a

13   monthly basis.  Tristar also receives an accounting fee of $1,800.00 per month to keep the

14   Debtor's books and records and review and coordinate tax returns, also paid by the Debtor

15   on a monthly basis.

16         8.      The management fee charged by Tristar is within industry standards.

17   Typical management fees range from 4-6%, including with respect to third-party hotels

18   that Tristar manages.  Indeed, the Debtor's loan documents with First Financial Bank

19   specifically acknowledge that Tristar will be the Debtor's management company and

20   provide that the management fee shall not be more than 6%.  Thus Tristar is at the low

21   end of the industry range.

22         9.      The Debtor maintains books and records as part of its regular business

23   practice relating to its hotel operations.  Tristar maintains these books and records on a

24   day-to-day basis on behalf of the Debtor.

25         10.     The Debtor's business records are made by a person with knowledge of the

26   relevant facts contained in such records, or made from information transmitted by a

person with knowledge of the relevant facts contained in such records. The Debtor's business records are made at or near the time of the acts, events, or transactions that are the subject of such records.

11.     I have access to and have reviewed the Debtor's business records relating to the matters referenced in this Declaration. Accordingly, I have personal knowledge relating to these matters.

**The Hotels**

12.     I have been in the hotel business since 1981. During that time, I've developed, owned, and managed over fifty (50) hotels in more than fifteen (15) states.

13.     The Debtor acquired the Comfort Inn in January, 2007. The Comfort Inn operates subject to a franchise agreement with Choice Hotels.

14.     The Debtor acquired the Holiday Inn in January, 2007. The Holiday Inn operates subject to a franchise agreement with Holiday Hospitality Franchising, LLC, which is a division of International Hotel Group ("**IHG**").[1]

15.     The Debtor employs approximately 9 full time and part time employees working at the Comfort Inn, and approximately 23 full time and part time employees working at the Holiday Inn.

16.     In addition to offering hotel rooms to the public, the Holiday Inn has a restaurant, lounge, cleaning department, laundry service, offers dry cleaning pickup and delivery, 3 meeting rooms that hotel customers or members of the public may rent for functions/meetings/events, a whirlpool, swimming pool, fitness center, internet, a business center and phone service.

17.     In addition to offering hotel rooms to the public, the Comfort Inn provides hot breakfast to its guests, has a gift shop, cleaning department, provides laundry service,

---

[1]     The Hotels were originally branded as a combined Radisson Inn hotel when they were purchased by the Debtor. The Debtor then rebranded the hotels as a Comfort Inn and a Holiday Inn. The hotels sit on different parcels of real estate, and are run independently.

has a whirlpool and swimming pool, a fitness center, offers dry cleaning pickup and delivery, and has internet, business center and phone service.

### The Debtor's Secured Loan

18.    On or about January 25, 2007, the Debtor obtained a loan from First Financial Bank secured by the Hotels (the "First Financial Loan"), in the original principal amount of $8,219,257.

19.    The Debtor executed a promissory note, mortgage, and security agreement, and purports to have granted certain collateral to First Financial Bank to secure the First Financial Loan, including collateral comprising "cash collateral."

20.    Other than First Financial Bank, I am not aware of any other obligations that are secured by the cash collateral of the Debtor.

21.    The current unpaid balance under the First Financial Loan is approximately $7,309,653.48.  Under the loan documents, monthly payments of principal and interest are owed on the 10th day of each month in the amount of approximately $56,000.

### The Debtor's Operations

22.    As a result of the Hotels' close proximity to Indiana University's main campus and the number of events that happen on and around campus year-round, each of the Hotels have historically performed well and brought in solid revenues.

23.    However, in 2019, three (3) new hotels were constructed and opened in the Bloomington market, adding approximately 500 rooms to the city.  This both increased available inventory for consumers and brought increased competition through newly constructed properties (which consumers typically prefer), but without increasing the underlying demand/need for additional hotel rooms. These new hotels negatively impacted the revenue and profitability of the Debtor's Hotels in 2019.

24.    Then, in early-to-mid-March 2020, when the COVID-19 pandemic hit the United States.  The COVID-19 pandemic resulted in the travel and hospitality industry in

Indiana and across the United States (and world) coming to a near-complete halt.

25. For instance, the Comfort Inn's occupancy rate averaged 46.8% from March 2019 through February 2020. The Holiday Inn's occupancy rate averaged 46% from March 2019 through February 2020.

26. However, during the COVID-19 pandemic, from March 2020 through June 2020, the occupancy rate of the Comfort Inn fell to an average of 26.2%. During the same time period, the occupancy rate of the Holiday Inn fell to an average of 14.6%.

27. Similarly, the combined revenue of the Hotels from January 1, 2019 through June 30, 2019 was approximately $1,629,000. During the same period of time this year (January 1, 2020 through June 30, 2020), the combined revenue of the Hotels fell to approximately $641,000, even though January and February 2020 were essentially normal months.

28. To demonstrate the significant impact since the COVID-19 pandemic hit the U.S., the year-over-year comparison of gross revenue is as follows:

| Holiday Inn - 2019 | Holiday Inn - 2020 | Comfort Inn - 2019 | Comfort Inn - 2020 |
|---|---|---|---|
| March: $177,903 | March: $66,981 | March: $76,345 | March: $43,961 |
| April: $182,899 | April: $14,288 | April: $67,842 | April: $13,007 |
| May: $278,816 | May: $31,334 | May: $140,028 | May: $29,037 |
| June: $179,029 | June: $53,858 | June: $92,556 | June: $50,758 |

29. As a result of the above struggles, even with a deferment of payments from First Financial Bank from March 2020 – August 2020, the Debtor has had negative net income during this period.

30. The Debtor had previously attempted to sell the Hotels and was in discussions with several potential buyers. However, due to the COVID-19 pandemic, those buyers have all backed out of all discussions, and there are no current potential

QB\763134883.2

buyers interested in the Hotels.

31.     Moreover, while revenues have improved somewhat during June-July, 2020, there is significant uncertainty in the short-term due to the ongoing effects of COVID-19 and factors outside the control of the Debtor.  As stated above, the Debtor's business has traditionally been buoyed by Indiana University and its athletic events and other scheduled events, such as football games (including Homecoming, Parents' Weekend, etc.), basketball games, fall and spring orientation weekends, fall and spring graduation weeks, etc.  Just this week, the Big Ten Football Conference (which Indiana University is a part of) cancelled its entire season.  This eliminated seven (7) scheduled home football games for Indiana University (both conference and non-conference games) that would have been held from September - December, 2020.

32.     Moreover, Indiana University has already announced it will be holding more classes online in the fall of 2020, which will also have an impact on the population of Bloomington and travel of students or parents.  With Big Ten Football being cancelled, and classes moving to online, Bloomington will have far fewer visitors in 2020 and 2021 who would normally stay at the Hotels.  Indiana's basketball schedule may also be postponed or delayed, and even if it does go forward, how many fans/parents/grandparents will be willing to travel?  All of these factors project a reduced level of income in the next 12 months and potentially longer.

33.     All of the foregoing has had a significant negative effect on the value of hotels generally, with any potential buyers vacating this asset class (except at extremely low, liquidation type values) and a negative effect on income.

34.     The Holiday Inn and Comfort Inn brands are strong and have historically served the Debtor well.  The Hotels are in a good location, supported by a major university.  The goal of this Chapter 11 is to create payment relief to allow the Debtor to have a "fresh start" in light of the significant loss in revenue that it is currently

1  experiencing and likely will experience for the foreseeable future. Prior to the COVID-19

2  pandemic, the Debtor had never missed a loan payment and had always paid its creditors.

3  The ability to reorganize will allow the Debtor to recover from the effects of COVID-19

4  even if the effects of the pandemic last for 12-36 months (as many experts predict), and

5  will put the Debtor in a strong position to generate sufficient cash flow to emerge from

6  Chapter 11 and survive.

7  **Cash Collateral Motion**

8       35.    In order to operate the Hotels, the Debtor has numerous recurring critical

9  expenses that must be paid. These expenses include the payment for payroll, utilities,

10 linens, cleaning services, franchise fees, bank/credit card fees, food, beer, and wine/liquor

11 inventory for the restaurant and hot breakfast, and other amounts necessary to operate

12 hotels.

13      36.    Accordingly, the Debtor is filing a first day motion requesting authorization

14 to use cash collateral to pay these ordinary course operating expenses for a thirteen-week

15 period.

16      37.    Attached to the motion for use of cash collateral is the 12-week budget,

17 which covers the operating expenses for both Hotels (the "Interim Budget"). Cash

18 collateral, accounts receivable, and inventory will continue to be replaced through the

19 booking and completion of reservations at the Hotels, sale of meals and gift shop

20 inventory, and the repurchase of inventory.

21      38.    If the Debtor is not permitted to pay these critical expenses, the Debtor

22 would not be able to operate and would have to close the Hotels. If the Hotels were to

23 close, the Debtor would be in default under its franchise agreements and the franchisors

24 could terminate such agreements, making the Hotels "unflagged". Moreover, the Debtor's

25 assets (consisting of used hotel furniture and furnishings, used TVs, kitchen equipment,

26 and non-perishable food items) available for liquidation would have a significantly

1  reduced value on a liquidation basis versus going-concern value. It is virtually a certainty

2  that in a liquidation, the only creditor who would receive any distribution would be First

3  Financial Bank, and payment in full is highly unlikely under that scenario.

4      39.    Conversely, as going concerns, the Hotels have significantly higher value

5  and can generate cash to pay creditors, particularly in the long term. Accordingly, I

6  believe it is in the best interests of creditors to allow the use of cash collateral to support

7  the going concern operations and that this will provide adequate protection to First

8  Financial Bank.

9      40.    To provide additional adequate protection, the Debtors propose to grant

10  replacement liens to First Financial Bank, to the same extent and priority as First

11  Financial Bank's prepetition liens. These replacement liens will protect First Financial

12  Bank to the extent of any diminution in value of its cash collateral.

13      41.    As shown in the Interim Budget, the Debtor has developed a cash forecast

14  for the next twelve weeks. I believe the Debtor can meet all of its operating expenses,

15  including employee wages and expenses, and accrue necessary cash during the thirteen-

16  week period using the current Cash Management Process (described below).

17  **Cash Management System and Existing Accounts**

18      42.    In the ordinary course of its business, the Debtor, acting through its

19  management company, Tristar, maintains a cash management process to fund its

20  operations and manage their cash flow (the "Cash Management Process"). Using the Cash

21  Management Process, the Debtor is able to efficiently collect funds generated by its

22  operations and distribute the funds, as necessary, to pay its obligations.

23      43.    Tristar, as the manager for the Hotels, maintains and oversees the Debtor's

24  the Cash Management Process.

25      44.    Tristar maintains separate accounts for the Debtor, and indeed separate

26  accounts for each of the Hotels. Collectively, there are ten (10) FDIC-insured bank

Case 2:20-bk-09355-DPC   Doc 6   Filed 08/14/20   Entered 08/14/20 15:47:36   Desc
QB\763134883.2
Main Document   Page 8 of 19

accounts—five for the Comfort Inn and five for the Holiday Inn—(each, an "<u>Account</u>" and together, the "<u>Accounts</u>") maintained at Chase Bank and First Financial in the name of Tristar.  The funds in the Accounts are segregated and are not commingled with any other hotel managed by Tristar.  A list of the Accounts, including the last four digits of each Account number and the cash balance as of the Petition Date, is set forth in **Exhibit 1**.

45.     Each Hotel receives revenue from the booking of reservations, as well as from the sale of food, beverages, and incidentals to hotel customers.  While a few customers pay in cash, the vast majority pay with debit and credit cards.

46.     The revenues and expenditures related to day-to-day operations flow through two accounts for each Hotel (each an "<u>Operating Account</u>" and together, the "<u>Operating Accounts</u>").  One Operating Account for each Hotel is used as the depository account, and the other Operating Account for each Hotel is used for all vendor accounts payable.  Tristar works with credit card processors who electronically deposit hotel guest's payments (less their processing fees) into the depository Operating Accounts each business day (the "<u>Credit Card Processing System</u>").[2]  Similarly, bookings made through the Franchisors' reservation booking systems are automatically deposited into the depository Operating Accounts.  From there, Tristar moves the funds to the other Operating Account for the Hotel, and pays the expenses of the Hotels and records the transactions.

47.     In addition to the Operating Accounts, Tristar maintains the following additional accounts for each Hotel: (i) manager's accounts for emergency expenditures, such as "cash-on-delivery" items and local store purchases, (ii) capital expenditures accounts, and (iii) payroll and property-related payment accounts.

---

[2]     The deposits are typically on a 2-3 business day "delay".  For example, credit card receivables generated on a Monday would not be deposited until Wednesday or Thursday of that week.  Tuesday's credit card receivables would not be deposited until Thursday or Friday of that week.  And so on.

48.     The Credit Card Processing System is integral to the Debtor's business, because the Debtor's principal source of income—reservations for hotel stays—is largely derived from debit and credit card transactions. Maintaining the integrity of the Credit Card Processing System postpetition and without interruption is essential to avoid disrupting the revenue received by the Debtor.

49.     In addition to receiving all of the Debtor's revenues in the depository Operating Accounts, Tristar acts as the central paymaster for all of the Debtor's expenses relating to each Hotel. Specifically, Tristar uses the revenues in each Hotel's Accounts to, among other things, (a) fund payroll for the Debtor's employees, (b) pay for repair and maintenance of the Hotels, (c) make payments to the Debtor's food, beverage, and other suppliers and unsecured creditors, (d) make debt service payments to First Financial on secured debt owed by the Debtor, (e) pay premiums for the Debtor's insurance policies, (f) pay for the Debtor's internet/cable contracts, and (g) pay for the Debtor's marketing expenses.

50.     Tristar also makes periodic transfers from each Hotel's Operating Account into the Accounts maintained as capital expenditures accounts for the Hotel as cash flow may allow.

51.     In the ordinary course of business, Tristar maintains records of the above-described items and transactions and can account for movement of funds into and out of the Accounts. Tristar uses a sophisticated suite of accounting software modules called M3 Hospitality Accounting to maintain its accounting records relating to the Debtor and the Hotels.

52.     The Debtor will work with Tristar to shift all of the funds held in the Accounts to a three new Accounts for each Hotel (each Hotel will have two Operating Accounts—a depository account and a separate account for day-to-day operating expenses, plus a manager's account) with an authorized depository under the guidelines

promulgated by the Office of the United States Trustee for Region 14. However, because the CC Processor, as well as the Franchisors, deposit all of the Debtor's revenues into the depository Operating Accounts, it will take some time to shift the Accounts to an authorized depository and communicate to the CC Processor and other vendors that the Operating Accounts have moved.

1

2       I hereby declare under the penalty of perjury of the laws of the United States of

3   America that the foregoing is true and correct to the best of my knowledge, information

4   and belief.

5

6                             KEN EDWARDS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

| | |
|---|---|
| 1 | COPIES of the foregoing sent via e-mail or via first-class mail this |
| 2 | 14th day of August, 2020, to all parties on the Court's Master Mailing |
| 3 | List attached hereto. |
| 4 | Office of the U.S. Trustee |
| 5 | 230 N .First Avenue, Suite 204 Phoenix, AZ 85004 Email: ustpregion14.px.ecf@usdoj.gov |
| 6 | |
| 7 | |
| 8 | /s/ Sybil Taylor Aytch |

COPIES of the foregoing sent via
e-mail or via first-class mail this
14th day of August, 2020, to all
parties on the Court's Master Mailing
List attached hereto.

Office of the U.S. Trustee
230 N .First Avenue, Suite 204
Phoenix, AZ 85004
Email: ustpregion14.px.ecf@usdoj.gov


/s/ Sybil Taylor Aytch

QB\763134883.2
-13-

Label Matrix for local noticing
0970-2
Case 2:20-bk-09355
District of Arizona
Phoenix
Fri Aug 14 15:21:37 MST 2020

KINSER GROUP LLC
C/O TRISTAR HOTEL MANAGEMENT
8747 E. VIA DE COMMERCIO
SCOTTSDALE, AZ 85258-3328

U.S. Bankruptcy Court, Arizona
230 North First Avenue, Suite 101
Phoenix, AZ 85003-0608

#VIDIT
2463 N LOS ALAMOS
MESA, AZ 85213-1687

ALLSTATE
9838 OLD BAYMEADOWS RD, #287
JACKSONVILLE, FL 32256-8101

AMAZON PAYMENTS, INC
PO BOX 81226
SEATTLE, WA 98108-1300

AMERICAN HOTEL REGISTER
PO BOX 206720
DALLAS, TX 75320-6720

ARIZONA DEPT. OF ECONOMIC
SECURITY
POST OFFICE BOX 6028 911B
PHOENIX, AZ 85005-6028

ARIZONA DEPT. OF REVENUE
1600 WEST MONROE, 7TH FLOOR
PHOENIX, AZ 85007-2650

AT&T GLOBAL NETWORK
P.O. BOX 5091
CAROL STREAM, IL 60197-5091

AT&T/4372
P.O. BOX 5094
CAROL STREAM, IL 60197-5094

AVESIS
9838 OLD BAYMEADOWS RD, #287
JACKSONVILLE, FL 32256-8101

BLOOMINGTON CLEANERS
317 WEST 17TH STREET
BLOOMINGTON, IN 47404-3453

CADILLAC COFFEE
PO BOX 932249
CLEVELAND, OH 44193-0010

CARBON'S GOLDEN MALTED
PO BOX 129
CONCORDVILLE, PA 19331-0128

CENTURYLINK
BUSINESS SERVICES
PO BOX 52187
PHOENIX, AZ 85072-2187

CHOICE HOTELS INTERNATIONAL, INC.
10750 COLUMBIA PIKE
SILVER SPRING, MD 20901-4402

CHOICE HOTELS INTL. (IN275-02)
PO BOX 99992
CHICAGO, IL 60696-7792

CINTAS CORPORATION
97627 EAGLE WAY
CHICAGO, IL 60678
CITY GLASS
719 W 17TH STREET
BLOOMINGTON, IN 47404-3331

CITY OF BLOOMINGTON UTILITIES
ATTN A/R
P.O. BOX 2500
BLOOMINGTON, IN 47402-2500

COMMERCIAL SERVICE OF BLOOMINGTON
4710 W VERNAL PIKE
BLOOMINGTON, IN 47404-9334

DENISE MILLER
C/O MATTHEW S. TARKINGTON
LEWIS & KAPPES, P.C.
2500 ONE AMERICAN SQUARE
INDIANAPOLIS, IN 46282

DEREK FLOTTUM
3755 E. FAIRMOUNT RD.
PHOENIX, AZ 85018-5124

DUKE ENERGY
P.O. BOX 1326
CHARLOTTE, NC 28201-1326

ECOLAB * 4244
P.O. BOX 70343
CHICAGO, IL 60673-0343

ECONOMY TERMITE & PEST CONTROL
P O BOX 1638
BLOOMINGTON, IN 47402-1638

EDWARD DON
2562 PAYSPHERE CIRCLE
CHICAGO, IL 60674-0001

EXTRA SPACE STORGAE
3950 JONATHON DR
BLOOMINGTON, IN 47404-4825

FEDEX
P.O. BOX 94515
PALATINE, IL 60094-4515

FIRST FINANCIAL BANK
2000 W. COURT STREET
KANKAKEE, IL 60901-3100

FIRST FINANCIAL BANK
300 HIGH STREET
HAMILTON, OH 45011-6045

FORTHPHAZE TECHNOLOGY, INC
414 WEDST KIRKWOOD
BLOOMINGTON, IN 47404

GRANITE TELECOM
P.O. BOX 983119
BOSTON, MA 02298-3119

GUEST SUPPLY
P.O. BOX 6771
SOMERSET, NJ 08875-6771

HD SUPPLY
P.O. BOX 509058
SAN DIEGO, CA 92150-9058

HERALD TIMES
P.O. BOX 909
1900 S WALNUT STREET
BLOOMINGTON, IN 47401-7720

HOLIDAY HOSPITALITY FRANCHISING, LLC
421 W MAIN STREET
FRANKFORT, KY 40601-1815

HOLIDAY HOSPITALITY FRANCHISING, LLC
C/O CORPORATION SERVICE COMPANY
8825 N 23RD AVENUE
SUITE 100
PHOENIX, AZ 85021-4148

HUFCOR INDIANA
28621 NETWORK PLACE
CHICAGO, IL 60673-1286

INDIANA LOGO SIGN GROUP
600. E 96TH STREET
SUITE 460
INDIANAPOLIS, IN 46240-3823

INNERWORKINGS
7503 SOLUTION CENTER
A/R
CHICAGO, IL 60677-7005

INTERCONTINENTAL HOTEL GROUP
PO BOX 101074
ATLANTA, GA 30392-1074

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

INTERSTATE BATTERIES
3301 W JONATHON DR
BLOOMINGTON, IN 47404-4888

IU SPORTS PROPERTIES
PO BOX 843038
KANSAS CITY, MO 64184-3038

K & S ROLLOFF
PO BOX 55
BLOOMINGTON, IN 47402-0055

KAYLINE PROFESSIONAL MAINT PRODUCTS
P.O. BOX 603207
CLEVELAND, OH 44103-0207

KOORSEN FIRE AND SECURITY, INC
2719 N. ARLINGTON AVE
INDIANAPOLIS, IN 46218-3300

LOCKTON COMPANIES
DEPT LA 23878
PASADENA, CA  91185-3878

M3
1715 N BROWN RD
BLDG A, SUITE 200
LAWRENCEVILLE, GA 30043-8119

OTIS ELEVATOR COMPANY
P.O. BOX 73579
CHICAGO, IL 60673-7579

PHILADELPHIA, PA 19101-7346
SECURITIES & EXCHANGE COMM.
5670 WILSHIRE BOULEVARD
11TH FLOOR
LOS ANGELES, CA 90036-5627

PLASTIC LOCTECH INTERNATIONAL
605 SWEETEN CREEK INDUSTRIAL PARK
ASHEVILLE, NC 28803-1774

PLAY NETWORK
PO BOX 21550
NEW YORK, NY 10087-1550

PRICE ELECTRIC
724 E THORNTON DR
BLOOMINGTON, IN 47401-6554

SABLE PRINTERS
PO BOX 171431
SPARTANBURG, NC 29301-0043

SHREDDING & STORAGE
3001 S WALNUT
BLOOMINGTON, IN 47401-7336

SINGLE DIGITS
4 BEDFORD FARMS, SUITE 210
BEDFORD, NH 03110-6528

SOUTHERN GLAZER'S
3901 HANNA CIRCLE
INDIAPOLIS, IN 46241-7210

SYSCO
P.O. BOX 7137
INDIANAPOLIS, IN 46207-7137

```
TSG ADMIN                        U.S. TRUSTEE                      USA TODAY
9838 OLD BAYMEADOWS RD, #287     OFFICE OF THE U.S. TRUSTEE        PO BOX 677446
JACKSONVILLE, FL 32256-8101      230 NORTH FIRST AVENUE            DALLAS, TX 75267-7446
                                 SUITE 204
                                 PHOENIX, AZ 85003-1725


(p)VAL U CHEM INC                VECTREN ENERGY DELIVERY           WHISTLE MESSAGING INC
2219 E UNIVERSITY DR             P.O. BOX 6248                     31416 AGOURA ROAD #105
PHOENIX AZ 85034-6803            INDIANAPOLIS, IN 46206-6248       WESTLAKE VILLAGE, CA 91361-5684


WORLD CINEMA                     ZURICH NORTH AMERICA              ISAAC M. GABRIEL
9801 WESTHEIMER, SUITE 409       PO BOX 4664                       QUARLES & BRADY LLP
HOUSTON, TX 77042-3953           CAROL STREAM, IL  60197-4664      2 N. CENTRAL AVENUE
                                                                   PHOENIX, AZ 85004-2322
```

         The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
         by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
INTERNAL REVENUE SERVICE         VAL-U-CHEM INC.
4041 N CENTRAL AVENUE            PO BOX 82310
BUILDING A                       PHOENIX, AZ 85071
PHOENIX, AZ  85012
```

         The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)INTERNAL REVENUE SERVICE      End of Label Matrix
CENTRALIZED INSOLVENCY OPERATIONS  Mailable recipients      68
P.O. BOX 7346                    Bypassed recipients       1
                                 Total                    69
```

## **EXHIBIT 1**

## **List of Debtor's Current Accounts and Last Four Digits of Account Nos.**

**Holiday Inn Accounts:**

Chase Checking Account: 5156 – Depository account for all credit card and cash deposits
Chase Checking Account: 1733 – Payroll and property payments (mortgage payments, property insurance, utilities, franchise fees, taxes) account
Chase Checking Account: 1758 – Manager's account, used by the hotel's general manager for emergencies, C.O.D. deliveries, and local store purchases
Chase Checking Account: 9196 – Capital expenditures account
First Financial Bank Checking Account: 1894 – Accounts payable vendor checking account

**Comfort Inn Accounts:**

Chase Checking Account: 5198 – Depository account for all credit card and cash deposits
Chase Checking Account: 1766 – Payroll and property payments (mortgage payments, property insurance, utilities, franchise fees, taxes) account
Chase Checking Account: 1774 – Manager's account, used by the hotel's general manager for emergencies, C.O.D. deliveries, and local store purchases
Chase Checking Account: 9758 – Capital expenditures account
First Financial Bank Checking Account: 1878 – Accounts payable vendor checking account

QB\763134883.2

-14-

Holiday Inn Bloomington  12-Week Cash Projection

| HOLIDAY INN | Week 1 | Week 2 | Week 3 | Week 4 |
|---|---|---|---|---|
| Starting Cash | 50,000 | 54,264 | 43,664 | 43,364 |
| Revenue: | | | | |
| Room Revenue | 17,800 | 17,800 | 21,800 | 24,800 |
| Restaurant Revenue | 200 | 200 | 200 | 200 |
| Gift Shop Revenue | 100 | 100 | 100 | 100 |
| Total Revenue | 18,100 | 18,100 | 22,100 | 25,100 |
| Sales Tax | 2,200 | 2,200 | 2,200 | 3,000 |
| Total Receipts | 20,300 | 20,300 | 24,300 | 28,100 |
| | | | | |
| Expenses: | | | | |
| Payroll | | 15,000 | | 15,000 |
| Marketing | 1,100 | 1,100 | 1,100 | 1,100 |
| Franchise Payments | | | 9,500 | |
| Credit Card Fees | 1,600 | | | |
| Sales Tax | | | 8,800 | |
| Management/Acct Fee | 5,136 | | | |
| Utilities | | 9,600 | | |
| Property Insurance | 3,000 | | | |
| Maintenance | 1,300 | 1,300 | 1,300 | 1,300 |
| Supplies | 2,200 | 2,200 | 2,200 | 2,200 |
| Other (A/C units) | 1,700 | 1,700 | 1,700 | 1,700 |
| Total Expenses | 16,036 | 30,900 | 24,600 | 21,300 |
| | | | | |
| Ending Cash | 54,264 | 43,664 | 43,364 | 50,164 |

| HOLIDAY INN | Week 5 | Week 6 | Week 7 | Week 8 |
|---|---|---|---|---|
| Starting Cash | 50,164 | 56,599 | 51,299 | 54,899 |
| Revenue: | | | | |
| Room Revenue | 22,600 | 27,600 | 28,900 | 24,400 |
| Restaurant Revenue | 300 | 300 | 300 | 300 |
| Gift Shop Revenue | 100 | 100 | 100 | 100 |
| Total Revenue | 23,000 | 28,000 | 29,300 | 24,800 |
| Sales Tax | 2,760 | 3,400 | 3,500 | 3,000 |
| Total Receipts | 25,760 | 31,400 | 32,800 | 27,800 |
| | | | | |
| Expenses: | | | | |
| Payroll | | 16,000 | | 16,000 |
| Marketing | 1,800 | 1,800 | 1,800 | 1,800 |
| Franchise Payments | | | 11,400 | |
| Credit Card Fees | 2,000 | | | |
| Sales Tax | | | 9,600 | |
| Management/Acct Fee | 6,125 | | | |
| Utilities | | 12,500 | | |
| Property Insurance | 3,000 | | | |
| Maintenance | 1,900 | 1,900 | 1,900 | 1,900 |
| Supplies | 2,500 | 2,500 | 2,500 | 2,500 |
| Other (A/C units) | 2,000 | 2,000 | 2,000 | 2,000 |
| Total Expenses | 19,325 | 36,700 | 29,200 | 24,200 |
| | | | | |
| Ending Cash | 56,599 | 51,299 | 54,899 | 58,499 |

| HOLIDAY INN | Week 9 | Week 10 | Week 11 | Week 12 |
|---|---|---|---|---|
| Starting Cash | 58,499 | 72,812 | 70,137 | 65,662 |
| Revenue: | | | | |
| Room Revenue | 30,700 | 30,900 | 26,700 | 29,700 |
| Restaurant Revenue | 500 | 500 | 100 | 68 |
| Gift Shop Revenue | 200 | 200 | 200 | 200 |
| Total Revenue | 31,400 | 31,600 | 27,000 | 29,968 |
| Sales Tax | 3,500 | 3,700 | 3,000 | 3,000 |
| Total Receipts | 34,900 | 35,300 | 30,000 | 32,968 |
| | | | | |
| Expenses: | | | | |
| Payroll | | 16,000 | | 16,000 |
| Marketing | 1,750 | 1,750 | 1,750 | 1,750 |
| Franchise Payments | | | 14,200 | |
| Credit Card Fees | 3,012 | | | |
| Sales Tax | | | 12,300 | |
| Management/Acct Fee | 6,600 | | | |
| Utilities | | 14,000 | | |
| Property Insurance | 3,000 | | | |
| Maintenance | 1,225 | 1,225 | 1,225 | 1,225 |
| Supplies | 2,400 | 2,400 | 2,400 | 2,400 |
| Other (A/C units) | 2,600 | 2,600 | 2,600 | 2,600 |
| Total Expenses | 20,587 | 37,975 | 34,475 | 23,975 |
| | | | | |
| Ending Cash | 72,812 | 70,137 | 65,662 | 74,655 |

Comfort Inn Bloomington  12-Week Cash Projection

| COMFORT INN | Week 1 | Week 2 | Week 3 | Week 4 |
|---|---|---|---|---|
| Starting Cash | 50,000 | 54,640 | 49,240 | 46,840 |
| Revenue: | | | | |
| Room Revenue | 15,500 | 15,000 | 18,000 | 18,000 |
| Restaurant Revenue | 0 | 0 | 0 | 0 |
| Gift Shop Revenue | 0 | 0 | 0 | 0 |
| Total Revenue | 15,500 | 15,000 | 18,000 | 18,000 |
| Sales Tax | 1,900 | 1,700 | 1,900 | 1,900 |
| Total Receipts | 17,400 | 16,700 | 19,900 | 19,900 |
| | | | | |
| Expenses: | | | | |
| Payroll | | 10,000 | | 10,000 |
| Marketing | 800 | 800 | 800 | 800 |
| Franchise Payments | | | 9,300 | |
| Credit Card Fees | 1,200 | | | |
| Sales Tax | | | 7,400 | |
| Management/Acct Fee | 4,420 | | | |
| Utilities | | 6,500 | | |
| Property Insurance | 1,540 | | | |
| Maintenance | 700 | 700 | 700 | 700 |
| Supplies | 2,600 | 2,600 | 2,600 | 2,600 |
| Other (A/C units, etc.) | 1,500 | 1,500 | 1,500 | 1,500 |
| Total Expenses | 12,760 | 22,100 | 22,300 | 15,600 |
| | | | | |
| Ending Cash | 54,640 | 49,240 | 46,840 | 51,140 |

| COMFORT INN | Week 5 | Week 6 | Week 7 | Week 8 |
|---|---|---|---|---|
| Starting Cash | 51,140 | 58,100 | 56,700 | 54,400 |
| Revenue: | | | | |
| Room Revenue | 17,600 | 16,600 | 16,900 | 16,800 |
| Restaurant Revenue | 0 | 0 | 0 | 0 |
| Gift Shop Revenue | 0 | 0 | 0 | 0 |
| Total Revenue | 17,600 | 16,600 | 16,900 | 16,800 |
| Sales Tax | 2,100 | 2,000 | 2,000 | 2,000 |
| Total Receipts | 19,700 | 18,600 | 18,900 | 18,800 |
| | | | | |
| Expenses: | | | | |
| Payroll | | 9,000 | | 9,000 |
| Marketing | 800 | 800 | 800 | 800 |
| Franchise Payments | | | 8,300 | |
| Credit Card Fees | 1,200 | | | |
| Sales Tax | | | 7,400 | |
| Management/Acct Fee | 4,500 | | | |
| Utilities | | 5,500 | | |
| Property Insurance | 1,540 | | | |
| Maintenance | 700 | 700 | 700 | 700 |
| Supplies | 2,500 | 2,500 | 2,500 | 2,500 |
| Other (A/C units, etc) | 1,500 | 1,500 | 1,500 | 1,500 |
| Total Expenses | 12,740 | 20,000 | 21,200 | 14,500 |
| | | | | |
| Ending Cash | 58,100 | 56,700 | 54,400 | 58,700 |

| COMFORT INN | Week 9 | Week 10 | Week 11 | Week 12 |
|---|---|---|---|---|
| Starting Cash | 58,700 | 68,020 | 69,200 | 71,066 |
| Revenue: | | | | |
| Room Revenue | 22,500 | 21,300 | 16,000 | 23,000 |
| Restaurant Revenue | 0 | 0 | 0 | 0 |
| Gift Shop Revenue | 50 | 50 | 50 | 50 |
| Total Revenue | 22,550 | 21,350 | 16,050 | 23,050 |
| Sales Tax | 2,500 | 2,200 | 1,926 | 2,000 |
| Total Receipts | 25,050 | 23,550 | 17,976 | 25,050 |
| | | | | |
| Expenses: | | | | |
| Payroll | | 9,850 | | 9,850 |
| Marketing | 630 | 630 | 630 | 630 |
| Franchise Payments | | | 1,030 | |
| Credit Card Fees | 2,490 | | | |
| Sales Tax | | | 8,500 | |
| Management/Acct Fee | 5,120 | | | |
| Utilities | | 5,940 | | |
| Insurance | 1,540 | | | |
| Maintenance | 800 | 800 | 800 | 800 |
| Supplies | 3,650 | 3,650 | 3,650 | 3,650 |
| Other (A/C units, etc.) | 1,500 | 1,500 | 1,500 | 1,500 |
| Total Expenses | 15,730 | 22,370 | 16,110 | 16,430 |
| | | | | |
| Ending Cash | 68,020 | 69,200 | 71,066 | 79,686 |